IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRANE WORLDWIDE LOGISTICS LLC | § § § | |
| *vs.* | § | C. A. NO. H – 17 – 2192 |
| | § | |
| C2C GLOBAL TRANSPORTATION USA, INC. | § § § | |

## *ORIGINAL  COMPLAINT*

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Crane Worldwide Logistics LLC files this Original Complaint against Defendant C2C Global Transportation USA, Inc. and, for causes of action, respectfully will prove by a preponderance of the credible evidence:

### *I.  Nature of the Action*

1.    Plaintiff brings this action as the assignee of YETI Coolers, LLC ("YETI"), and in its own capacity, to recover monetary damages for the July 2016 losses of four (4) containerized cargos of coolers, ice chests, tanks and/or related products (the "Cargos") while stored in Grapevine, Texas.

### *II.  Jurisdiction and Venue*

2.    The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1) because each matter in controversy exceeds the sum or value of

$75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.     Venue in this district is proper under 28 U.S.C. § 1391(a)(1) because Defendant resides in this district.

### III.  Parties

4.     Plaintiff is a Delaware limited liability company with its principal place of business in Houston, Texas.

5.     On information and belief, Defendant is an Illinois corporation with its principal place of business in Ottawa, Province of Ontario, Canada.

6.     At all times material, Defendant engaged in business in Texas as an interstate common carrier of goods by road for hire.

7.     Alternatively, at all times material, Defendant engaged in business in Texas as a warehouseman and/or bailee of goods for hire.

8.     At all times material, Defendant owned, leased, operated, maintained, managed and/or used a storage and/or warehouse facility at 801 Hanover Drive in Grapevine (the "Warehouse") for the purpose of storing for profit various goods and/or commodities.

9.     Defendant can be served by its registered agent, Capitol Corporate Services, Inc., at 206 East 9th Street, Suite 1300, Austin, Texas 78701–4411.

## IV.  Facts

10.    On or about January 26, 2016, Plaintiff and Defendant entered into a written "Agent (Vendor) Carrier Agreement for Line Haul Services" (the "Agreement") under which Defendant agreed to transport shipments tendered by Plaintiff for Plaintiff's customers.

11.    In and/or before June 2016, Plaintiff agreed with YETI to arrange the Cargos' (a) ocean carriage from the loading ports of Xiamin or Manila to the discharge ports of Los Angeles or Long Beach, (b) rail carriage from the discharge ports to Dallas, Texas, and (c) local drayage and delivery from the Union Pacific Dallas Intermodal Terminal to YETI's designated consignee in Dallas.

12.    In and/or before June 2016 and pursuant to the Agreement, Defendant promised Plaintiff safely to receive, handle, carry and deliver locally in Dallas to YETI's designated consignee the Cargos in the same good order and condition as when they had been received.

13.    On information and belief, during July 2016, each of the Cargos arrived at the Union Pacific Dallas Intermodal Terminal in good order and condition.

14.    On information and belief and pursuant to the Agreement with Plaintiff, on each of the respective dates of July 16, 2016, July 20, 2016, July 21, 2016 and July 23, 2016, Defendant knowingly received the Cargos in good order and condition into its sole dominion, possession, care, custody and/or control, and departed the Union Pacific Dallas Intermodal Terminal with them.

3

15.     On information and belief and pursuant to the Agreement with Plaintiff, on or soon after each of the respective dates of July 16, 2016, July 20, 2016, July 21, 2016 and July 23, 2016, for the benefit of Plaintiff and/or YETI, Defendant knowingly accepted and received the Cargos into its sole dominion, possession, care, custody and/or control at the Warehouse for the intended purpose of later delivering them to YETI's designated consignee in the same good order and condition as when they had been received.

16.     On unknown dates and at unknown times during July 2016, one or more unidentified persons separately removed each of the Cargos from the Warehouse.

17.     Since the dates and times of those occurrences, Defendant never has identified or explained the disposition, location or existence of any of the Cargos.

18.     At the times of the occurrences, YETI owned each of the Cargos.

20.     At the times of the occurrences, each of the Cargos consisted solely of personal property.

19.     At the times of the occurrences, the total sound and/or fair market value of each of the Cargos exceeded the sum of $75,000.

20.     Upon notice of the losses, Plaintiff and/or YETI gave Defendant timely written notice and demand for the Cargos' immediate return or for reimbursement of their total sound and/or fair market value.

21.     At all times material, Defendant refused to return the Cargos or reimburse Plaintiff or YETI for their total sound and/or fair market value.

22.     On information and belief, each occurrence proximately resulted from Defendant's act(s) and/or omission(s) including, but not limited to, the failure and/or refusal to take reasonable measures to:

(a)     Maintain the Warehouse in good repair for its reasonably intended purposes;

(b)     Have and use reasonable fixtures and/or equipment to store and protect the Cargos in or at the Warehouse;

(c)     Establish and follow reasonable procedures for operating the Warehouse, storing the Cargos or protecting the Cargos;

(d)     Conduct a safety analysis and/or risk assessment of the Warehouse;

(e)     Store the Cargos in a reasonably safe place and manner;

(f)     Monitor the conditions of the Cargos and Warehouse;

(g)     Supervise the storage and safekeeping of the Cargos in or at the Warehouse;

(h)     Provide a security awareness program to employees including, but not limited to, maintaining Warehouse integrity and determining and preventing unauthorized access to the Warehouse;

(i)     Develop and implement a sound written security plan to implement, maintain and enhance reasonable security procedures;

(j)     Well regard and follow the recommendations of reputable and/or credible security experts and/or consultants set forth in any reports

addressing Warehouse safety, security and/or risk assessment;

(k)     Prevent, discourage, restrict, limit or detect unauthorized access to vehicle, gate and Warehouse keys;

(l)     Inspect, monitor, maintain, repair and/or replace the Warehouse's theft prevention and theft detection equipment and systems;

(m)     Hire and train an adequate number of competent personnel to perform services under the Agreement;

(n)     Prevent, discourage, restrict, limit or detect unauthorized access to the Warehouse where the Cargos were stored including, but not limited to, (i) erecting and maintaining adequate fences and/or barriers, (ii) erecting and maintaining adequate gates with adequate locks and/or locking devices, (iii) employing reasonably trained, instructed and equipped security protection officers or guards to prevent, respond to and report any unauthorized entry, (iv) installing and maintaining reasonably tamperproof and secure locks and/or locking devices on external and internal doors, windows, gates and fences, and (v) incorporating architectural or construction features into the building structure that discourage, protect against or prevent access, intrusion and/or tampering with entry points and critical infrastructure elements and components, such as telephone, security and electrical service wiring;

(o)     Provide exterior and interior monitoring, deterrence and post-incident review of persons entering or attempting to enter without authorization the Warehouse where the Cargos were stored including, but not limited to, (i) installing and maintaining unobstructed fixed, rotating, remotely controlled, hidden and/or visible closed circuit TV cameras (CCTV), (ii) employing reasonably trained, instructed and equipped protection officers or

guards to provide surveillance, (iii) installing and maintaining external and internal silent or audible intruder alarm systems incorporating motion, heat, broken circuit, contact, touch and/or vibration sensors, and (iv) installing and maintaining reasonably tamperproof and adequate lighting of entry paths, entry points, dock areas, exterior walls and parking areas;

(p)     Perform all acts reasonably necessary to fulfill its obligations under the Agreement;

(q)     Warn Plaintiff of an unreasonable risk of loss to each of the Cargos;

(r)     Be responsible for the storage, safekeeping and safe handling of the Cargos at all times in accordance with the Agreement while the Cargos were in Defendant's sole dominion, possession, care, custody and/or control, as any reasonable warehouse would under like circumstances;

(s)     Bear the risk of loss for the lost Cargos; and/or

(t)     Indemnify Plaintiff or YETI for the loss of each of the Cargos, along with all costs including reasonable attorney fees, arising out of its performance of services under the Agreement, or the injuries and damages to property incurred in connection with the performance of services under the Agreement.

23.     In October 2016 and in consideration of YETI's written assignment to Plaintiff of all rights in the Cargos which YETI then possessed against Defendant and/or any other person or entity who had caused the occurrences, Plaintiff paid YETI the amount of $407,008.19.

24.     At all times material, Plaintiff performed its obligations under the Agreement with Defendant.

25.     At no time did Plaintiff's own acts or omissions cause or contribute to cause the loss of any of the Cargos or Plaintiff's proximately resulting injuries and damages.

26.     All conditions precedent have been performed or have occurred for Plaintiff to bring this action and demand payment from Defendant for all damages proximately arising from the loss of each of the Cargos.

27.     It has become necessary for Plaintiff to employ the law firm of Sharpe & Oliver, L.L.P. to recover the damages owed by Defendant.

## V.   Assigned Cause of Action – Breach of Contract of Carriage

28.     Plaintiff realleges and incorporates by reference all of the foregoing facts.

29.     Plaintiff's losses and damages proximately resulted from Defendant's aforementioned act(s) and/or omission(s) constituting negligence, breach of contract, breach of bailment and/or violation(s) of the duties of a bailee and/or common carrier of goods by road for hire.

30.     Alternatively, as the receiving motor carrier providing transportation or service subject to jurisdiction under Subchapter I or III of Chapter 135 or Chapter 105 of Title 49 of the United States Code, Defendant is liable to Plaintiff as the person

entitled to recover under the receipts or bills of lading for the actual loss or injury to the Cargos.

31.     Plaintiff cannot more specifically allege Defendant's act(s) and/or omission(s) constituting negligence and, accordingly, invokes and relies upon the doctrine of *res ipsa loquitur* because the character of each loss was such that it would not have happened in the absence of negligence, and the instrumentality causing each occurrence exclusively was within Defendant's control.

32.     Plaintiff legally is entitled to recover from Defendants the amount of the actual loss to each of the Cargos.

33.     A sum in excess of the minimum jurisdictional limit of $75,000, plus all reasonable and necessary incidental damages, if paid now in cash to Plaintiff, fairly and reasonably would compensate it for the actual loss to each of the Cargos proximately resulting from Defendant's act(s) and/or omission(s).

34.     Plaintiff also legally is entitled to recover interest on its damages, dating from July 16, 2016, and post–judgment interest and costs of court incurred.

## VI.  *Assigned Cause of Action – Conversion*

35.     Plaintiff realleges and incorporates by reference all of the foregoing facts.

36.     The loss of each of the Cargos and Plaintiff's damages proximately resulted from Defendant's assumption and exercise of dominion, possession, care, custody and/or control over the Cargos in an unlawful and unauthorized manner, to

the exclusion of and inconsistent with YETI's or Plaintiff's rights.

37.    Plaintiff legally is entitled to recover from Defendants the amount of the actual loss to each of the Cargos.

38.    A sum in excess of the minimum jurisdictional limit of $75,000, plus all reasonable and necessary incidental damages, if paid now in cash to Plaintiff, fairly and reasonably would compensate it for the actual loss to each of the Cargos proximately resulting from Defendant's act(s) and/or omission(s).

39.    Plaintiff also legally is entitled to recover interest on its damages, dating from July 16, 2016, and post–judgment interest and costs of court incurred.

### VII.  Direct Cause of Action – Breach of Contract

40.    Plaintiff realleges and incorporates by reference all of the foregoing facts.

41.    The loss of each of the Cargos and Plaintiff's damages proximately resulted from Defendant's above described act(s) and/or omission(s) constituting breach of the Agreement.

42.    A sum in excess of the minimum jurisdictional limit of $75,000, if paid now in cash to Plaintiff, fairly and reasonably would compensate it for the full actual loss of each of the Cargos, all resulting economic loss, all resulting consequential damages, and all reasonable and necessary incidental damages proximately resulting from Defendant's act(s) and/or omission(s).

43.    Under the Agreement and § 38.001 of the Texas Civil Practice & Remedies

Code, Plaintiff further is entitled to recover from Defendant its reasonable and necessary attorney fees.

## VIII.  Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff Crane Worldwide Logistics LLC respectfully asks that the Honorable Court adjudge that Defendant C2C Global Transportation USA, Inc. is liable to Plaintiff for its alleged damages, reasonable and necessary attorney fees, pre–judgment interest, post–judgment interest, court costs, and all other relief as justice and equity allow.

Respectfully submitted,

*SHARPE & OLIVER, L.L.P.*

By_____

Robert C. Oliver
State Bar No. 15255700
S. D. Texas No. 886
5535 Memorial Drive, Suite F570
Houston, Texas 77007
Telephone:        (713) 864–2221
Facsimile:        (713) 864–2228
Email:      macknife@macknife.net

OF COUNSEL:

R. M. Sharpe, Jr.
State Bar No. 18129000
S. D. Texas No. 889

ATTORNEYS   FOR   PLAINTIFF

11